Alan Ellis
LAW OFFICES OF ALAN ELLIS
80 Pinheiro Circle
Novato, CA 94945
Telephone: (415) 895-5076
AELaw1@alanellis.com

*Attorney for Petitioner Blake Johnston*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | NO. CR-14-00545-JSW |
| | ) | |
| Respondent, | ) | REPLY MEMORANDUM OF POINTS |
| | ) | AND AUTHORITIES IN FURTHER |
| v. | ) | SUPPORT OF PETITIONER'S MOTION |
| | ) | PURSUANT TO 28 U.S.C. § 2255 |
| BLAKE JOHNSTON, | ) | |
| | ) | |
| Petitioner. | ) | |
| _____ | ) | |

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES
IN FURTHER SUPPORT OF PETITIONER'S MOTION
PURSUANT TO 28 U.S.C. § 2255**

# **TABLE OF CONTENTS**

Table of Authorities ............................................................................................................ ii

Preliminary Statement.........................................................................................................1

Argument……. ...................................................................................................................1

      I.       Defendant's Ineffective Assistance Claims Are Not Waived..................................1

      II.      Counsel was Ineffective for Not Providing the Sentencing
              Court with Life Expectancy Data ............................................................................3

      III.     Failure to Present Sentencing Statistics Was Ineffective Assistance.......................4

      IV.     Failure to Call Dr. Lines as a Sentencing Witness Was Ineffective
              Assistance ...............................................................................................................11

      V.      Failure to Object to the Imposition of a Fine Was Ineffective
              Assistance ...............................................................................................................13

      VI.     The Cumulative Effect of Counsel's Errors Requires Relief.................................14

Conclusion….. ...................................................................................................................14

# TABLE OF AUTHORITIES

**Cases:**

*Edwards v. United States*, 2016 WL 1312000 (D. Conn. 2016)......................................................2

*Ewing v. Williams*, 596 F.2d 391 (9th Cir. 1979) ........................................................................14

*Gall v. United States*, 552 U.S. 38 (2007) ....................................................................................5n

*Harris v. Thompson*, 698 F.3d 609 (7th Cir. 2012) ..................................................................11,12

*Jones v. United States*, 224 F.3d 1251 (11th Cir. 2000) ...........................................................11,12

*Murdock v. United States*, 589 Fed. Appx. 526 (11th Cir. 2015) ....................................................2

*Riggs v. Fairman*, 399 F.3d 1179 (9th Cir. 2005)............................................................................4

*Rompilla v. Beard*, 545 U.S. 374 (2005).........................................................................................8

*Sanders v. Ratelle*, 21 F.3d 1446 (9th Cir.1994) ............................................................................4

*Saranchak v. Beard*, 616 F.3d 292 (3d Cir. 2010)....................................................................11.12

*United States v. Ballesteros*, 23 Fed. Appx. 718 (9th Cir. 2001)..................................................14

*United States v. Boston*, 625 Fed. Appx. 486 (11th Cir. 2009) .....................................................10

*United States v. Brasfield*, 2011 WL 3844181 (E.D. Wis. 2011)....................................................9

*United States v. Buesing*, 615 F.3d 971 (8th Cir. 2010) .................................................................9

*United States v. Cabrera*, 603 Fed. Appx. 322 (5th Cir. 2015) ......................................................6

*United States v. Garcia-Jaquez*, 807 F. Supp. 2d 1005 (D. Colo. 2011).........................................9

*United States v. Irving,* 554 F.3d 64 (2d Cir. 2009)........................................................................8

*United States v. Jenkins*, 854 F.3d 181 (2d Cir. 2017) ...........................................................3,4,8,9

*United States v. Jenkins*, 2017 WL 1382201 (2d Cir. 2017) ..........................................................6

*United States v. Kamper*, 860 F. Supp. 2d 596 (E. D. Tenn. 2012)............................................9,10

*United States v. Musgrave*, 647 Fed. Appx. 529 (6th Cir. 2016)....................................................9

*United States v. Plouffe*, 436 F.3d 1062 (9th Cir. 2006) ................................................................10

*United States v. Smith*, 440 F.3d 704 (5th Cir. 2006) ......................................................................5

*United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008) ......................................................9

*United States v. Stock*, 685 F.3d 631 (6th Cir. 2012) ................................................................8,9,9n

*United States ex rel. United States Attorneys for the Eastern and Western Districts of Kentucky v. Kentucky Bar Ass'n*, 439 S.W.3d 136 (Ky. 2014) ..................................2

*Wade v. Calderon*, 29 F.3d 1312 (9th Cir. 1994) ..........................................................................14

*Wiggins v. Smith,* 539 U.S. 510 (2003) ............................................................................................7

*Williams v. Taylor*, 529 U.S. 362 (2000) .........................................................................................7

**Statutes and Rules:**

28 U.S.C. § 2255 ..................................................................................................... *passim*

Fed. R. Crim. Pro. 26 ......................................................................................................................11

Fed. R. Crim. Pro. 32 ......................................................................................................................11

U.S.S.G. § 2G1.3 ..........................................................................................................................4,5

**Other Authorities:**

ABA Resolution 113E, Adopted by the House of Delegates (2013) ...............................................3

Advisory Comm. of the Sup.Ct. of Mo. Formal Op. 126 (2009) ....................................................3

Ala. Bar Ethics Op. RO 2011-02 .....................................................................................................3

Ariz. State Bar Comm. on the Rules of Prof'l Conduct, Op. 95-08 ................................................3

NACDL Ethics Advisory Committee Formal Opinion 12–02 (Oct. 2012) ....................................3

N.C. State Bar Ethics Comm'n, Formal Op. RPC 129 (2d Rev.) (1993) ........................................3

Nev. Standing Comm. on Ethics and Prof'l Responsibility, Formal Op. No. 48 (2011) ................3

Ohio Board of Commissioners on Grievance and Discipline, Op. 2001-6 .....................................3

Penn. Bar Ass'n Committee Opinion 2014-100 ................................................................................3

Tenn. Bd. Prof'l Resp. Advisory Op. 94-A-549 ...............................................................................3

Va. State Bar Legal Ethics Op. No. 1857 (2011)..............................................................................3

Vt. Bar Ass'n Advisory Ethics Op. 95-04 ........................................................................................3

**PRELIMINARY STATEMENT**

Petitioner BLAKE JOHNSTON, by and through his counsel Alan Ellis, respectfully submits this Reply Memorandum of Points and Authorities in response to the Government's Memorandum in Opposition (Doc. 124) and in further support of his petition to vacate his sentence pursuant to 28 U.S.C. § 2255 (Docs. 117 and 120). In response thereto, and in support thereof, Mr. Johnston states as follows:

**ARGUMENT**

**I.     Defendant's Ineffective Assistance Claims Are Not Waived.**

The Government first argues that Mr. Johnston's claims are waived by reason of paragraph 5 of his plea agreement, which contains a waiver of collateral attack on his conviction or sentence except to the extent of ineffective assistance "in connection with the negotiation of [the] agreement or the entry of [his] guilty plea." *See* Doc. 124 at 10-11. However, it is current Justice Department policy not to enforce waivers of *any* meritorious claim of ineffective assistance, even where that claim relates solely to sentencing.

Annexed hereto as Exhibit A is the memorandum of Deputy Attorney General James M. Cole issued on October 14, 2014, which notes the Justice Department's strong interest in ensuring that criminal defendants receive effective assistance of counsel and states in pertinent part as follows:

> Federal prosecutors should no longer seek in plea agreements to have a defendant waive claims of ineffective assistance of counsel whether those claims whether those claims are made on collateral attack or, when permitted by circuit law, made on direct appeal. *For cases in which a defendant's ineffective assistance claim would be barred by a previously executed waiver, prosecutors should decline to enforce the waiver when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve.* (Emphasis added).

1

As of this date, the Cole memorandum is still posted on the Justice Department's web site,[1] and there is no indication that the Justice Department has revoked the policy stated therein.

The courts have given effect to the Cole memorandum. *See, e.g., Murdock v. United States*, 589 Fed. Appx. 526, 527 (11th Cir. 2015) (per curiam) (where district court had dismissed ineffective assistance of counsel claim based on collateral attack waiver, circuit court remanded for hearing in light of the memorandum). Since, under that memorandum, any waiver of defendant Johnston's ineffective assistance claim is ineffective, it is therefore properly before this Court.[2]'

Finally, defendant notes that a number of state and federal courts and ethics opinions have frowned upon collateral attack waivers that include ineffective assistance claims, particularly where the defendant is made to waive ineffective assistance claims with regard to proceedings such as sentencing that have not yet happened. The Kentucky Supreme Court in *United States ex rel. United States Attorneys for the Eastern and Western Districts of Kentucky v. Kentucky Bar Ass'n*, 439 S.W.3d 136, 151-57 (Ky. 2014), conducted an extensive discussion finding (a) that it was unethical for defense attorneys to agree to waive prospective ineffective assistance claims, as this created a conflict of interest and an improper limitation on malpractice liability; and (b) it was equally unethical for prosecutors to insist on such waivers, as this would constitute disregard of the prosecutor's role as "minister of justice." The court in *Edwards v. United States*, 2016 WL 1312000, *5-6 (D. Conn. 2016) likewise expressed "profound

---

[1] See https://www.justice.gov/file/70111/download (visited June 19, 2017).

[2] Indeed, given that the plea agreement in this case was entered into on December 1, 2015 – more than a year after the Cole memorandum was promulgated – any purported waiver of claims of ineffective assistance at sentencing was obtained in violation of Justice Department policy in the first place.

reservations about the ethics of plea agreements in which a criminal defendant, on the advice of his counsel and at the initiation of the Government, agrees to waive past and prospective ineffective assistance claims against the advising attorney" and "doubt[ed] that such a waiver would be knowing, informed, and enforceable," though ultimately finding the issue moot because the challenged waiver provision did not apply to the claims the defendant was making. And at least ten (10) state bar ethics opinions, as well as formal opinions from the ABA and NACDL, have concluded likewise. *See* Pennsylvania Bar Association, PBA Committee Opinion 2014-100; Nev. Standing Comm. on Ethics and Prof'l Responsibility, Formal Op. No. 48 (2011); Va. State Bar Legal Ethics Op. No. 1857 (2011); Ala. Bar Ethics Op. RO 2011-02; Advisory Comm. of the Sup.Ct. of Mo. Formal Op. 126 (2009); Ohio Board of Commissioners on Grievance and Discipline, Op. 2001-6; Vt. Bar Ass'n Advisory Ethics Op. 95-04; Ariz. State Bar Comm. on the Rules of Prof'l Conduct, Op. 95-08; Tenn. Bd. Prof'l Resp. Advisory Op. 94-A-549; N.C. State Bar Ethics Comm'n, Formal Op. RPC 129 (2d Rev.) (1993); *see also* ABA Resolution 113E, Adopted by the House of Delegates (2013) (Report); NACDL Ethics Advisory Committee Formal Opinion 12–02 (Oct. 2012). Thus, for all the above reasons, this Court should find that Mr. Johnston's ineffective assistance claims are properly before it.

## II. Counsel was Ineffective for Not Providing the Sentencing Court with Life Expectancy Data.

The Government's opposition submission completely fails to address one of the grounds of ineffective assistance asserted by defendant: namely, that counsel Goldrosen failed to present the district court with life expectancy statistics showing that 30 years would be a *de facto* life term. *See* Doc. 120 at 4-5. The Government does not dispute that "as a statistical matter, the life expectancy of an incarcerated person drops significantly for each year of incarceration," indeed amounting to a two-year decrease for each year in prison, *see id.* at 4, *citing United States v.*

*Jenkins*, 854 F.3d 181, 186 n.2 (2d Cir. 2017), nor does it dispute that statistics regarding the life expectancy of prisoners were easily available and could have been presented by Mr. Goldrosen easily and without risk of backlash, *see id.* at 5.

Moreover, such statistics might well have made a difference at sentencing. Although the sentencing court clearly lacked sympathy for Mr. Johnson, it was concerned – like any reasonable sentencing judge – that too long a sentence might reduce the incentive to plead guilty. *See* Doc. 124-10 (Sentencing Transcript) at 5. In particular, this Court stated "I will take notice of the fact that if the Government insists on a sentence that is so substantial that a defendant has no incentive to plead guilty that the case results in a trial, that… has very serious consequences for any witnesses or young witnesses of particular victims." *Id.* Certainly, if a defendant such as Mr. Johnston pleads guilty and then receives a sentence which will likely result in him dying in prison anyway, that would produce the very disincentive feared by the sentencing court the next time a similarly situated defendant contemplates whether to plead guilty or go to trial.

Defendant reiterates that the "reasonable probability" standard applicable to ineffective assistance claims is "a fairly low threshold." *Riggs v. Fairman*, 399 F.3d 1179, 1183 (9th Cir. 2005), *citing Sanders v. Ratelle*, 21 F.3d 1446, 1461 (9th Cir.1994). Here, there was no downside to presenting life expectancy data, no valid strategic reason not to do so, and in view of the sentencing court's concern about creating disincentives to plead, there is at minimum a reasonable probability that presentation of such data might have resulted in a more favorable outcome for Mr. Johnston.

**III.   Failure to Present Sentencing Statistics Was Ineffective Assistance.**

Contrary to the Government's contention, *see* Doc. 124 at 12-17, Mr. Goldrosen was also ineffective for not presenting the sentencing court with statistics showing that a 360-month

sentence would be unprecedented for someone with Mr. Johnson's (a) base guideline of U.S.S.G. § 2G1.3, (b) criminal history category of I, (c) total offense level of 32, (d) plea status, and (e) statutory maximum. Unlike the generalized statistics at issue in the cases relied upon by the Government, *see* Doc. 124 at 15 n.4, these statistics are sufficiently finely grained to ensure that the underlying cases are comparable to Mr. Johnston's, and presentation of this data would have revealed how excessive a sentence of 360 months in fact was.

As a threshold matter, two of the Government's arguments are red herrings. The Government expends a great deal of ink arguing that Sentencing Stats LLC, which produced the statistics submitted in support of the 2255 motion, is owned by a close associate of the undersigned counsel. *See* Doc. 124 at 16-17. But this would only be relevant if defendant were to argue that all criminal defense counsel have a duty to obtain statistics from Sentencing Stats LLC, *which he does not*. As explained in at page 3 of the original moving papers (Doc. 120), these statistics are derived from "the Commission's publicly available datafiles and charts," and there was nothing to prevent Mr. Goldrosen from doing an analysis similar to what Sentencing Stats LLC did.

This is not, as the Government implies, an attempt to promote Sentencing Stats LLC by urging this Court to hold that defense counsel must use that company's services or else be ineffective. Statistical evidence need not be bought from that or a similar company[3]; with a modicum of work, it can be developed from public sources. Moreover, there is nothing improper or even unusual about the fact that the undersigned counsel turned to a company he knows and trusts, and to an expert he has worked successfully with in the past, to provide professional

---

[3] Moveover, undersigned counsel and Mark Allenbaugh are not business partners. Mr. Allenbaugh is simply a consultant to Mr. Ellis's firm as any other criminal justice professionals including a number of former, now retired, Bureau of Prisons officials. He was paid $3,000 for his statistical work on this case.

statistical services in this case.  That the Government would attempt to make an issue of this entirely ordinary practice speaks volumes about the true weakness of its argument.

Another red herring is the Government's contention that defense counsel are not required to present sentencing statistics in *all* cases.  *See* Doc. 124 at 12, 14.  But Mr. Johnston does not make this argument either.  It is not contended here that criminal defense lawyers must *always* present statistical evidence.  There are situations where such evidence is not necessary; for instance, there are many cases where the parties are in rough agreement on what the sentence will be (e.g., where the plea agreement holds both the defendant and the Government to the Sentencing Guidelines) and where the risk of an aberrant sentence is low.  But in this case, the Government sought a 30-year prison term in its sentencing memorandum, and therefore put Mr. Goldrosen on notice that a sentence more than twice the high end of the advisory Guideline range was at issue.[4]  Through statistics, he could have shown that such a sentence was extraordinarily high even for sex offenses that fall within U.S.S.G. § 2G1.3.  It is circumstances such as this – where a highly aberrant non-Guideline sentence is advocated by a party – that effective advocacy would call for assembling mitigation in the form of statistical proof.[5]

Notably, appellate courts have faulted defendants for not presenting precisely such evidence in mitigation of above-guideline sentences.  In *United States v. Smith*, 440 F.3d 704, 709 (5th Cir. 2006), the court rejected the defendant's argument that "the selection of a sentence seven increments above the Guideline range" created an unwarranted disparity, noting that he

---

[4] Indeed, the plea agreement itself contained a paragraph stating that a "reasonable and appropriate disposition" might involve a sentence of up to 30 years, thus putting Mr. Goldrosen on notice even earlier of the need to obtain mitigation.

[5] Likewise, the Government's contention that, under *Gall v. United States*, 552 U.S. 38 (2007), a district court sufficiently considers unwarranted disparities by calculating the Guideline level (*see* Doc. 124 at 12) rings hollow where, as here, the sentence imposed was an extraordinary above-Guideline variance.

"fail[ed] to provide the court with evidence, *such as average sentences for similarly-situated defendants* or a case in which a similarly-situated defendant received a lesser sentence, to enable this Court to determine whether his sentence violated the Sentencing Reform Act provision" (emphasis added).  Likewise, in *United States v. Cabrera*, 603 Fed. Appx. 322, 323 (5th Cir. 2015), the court noted that "Cabrera has provided no evidence, *such as nationwide sentencing statistics*, of an unwarranted disparity between his sentence and the sentences of any similarly situated defendants nationwide" (emphasis added).  Hence, where, as here, a substantial upward variance was in play via the plea agreement and the Government's sentencing memorandum, good and accepted professional practice called for submission of statistics, and it is not necessary to find a general duty to submit statistical proof in order to find one here.

With these red herrings out of the way, defendant turns to the Government's other arguments.  The Government contends, for example, that defendant has not cited cases explicitly holding that a defense counsel must provide statistics to the sentencing court, *see* Doc. 124 at 12, 14, and that the Second Circuit in *United States v. Jenkins*, 2017 WL 1382201 (2d Cir. 2017), "declined to find ineffective assistance" based on failure to submit such proof, *see id.* at 15.  But the *Jenkins* court did not "decline to find ineffective assistance" on the merits; instead, it simply found that such a claim would be better brought in a Section 2255 motion such as Mr. Johnston brings now.  *See Jenkins*, 2017 WL 1382201, *1,[6] and the duty to provide such evidence falls well within the settled precedent holding that defense attorneys are required to investigate, develop and present appropriate mitigation, *see Wiggins v. Smith,* 539 U.S. 510 (2003) (ineffective assistance where counsel failed to present mitigating evidence that he knew existed and that there was no risk to presenting); *accord Williams v. Taylor*, 529 U.S. 362 (2000);

---

[6] It is not even clear from the *Jenkins* decision that the ineffective assistance claim involved failure to provide statistics to the sentencing court.

7

*Rompilla v. Beard*, 545 U.S. 374 (2005).

The Government likewise contends that the *Jenkins* court held that "in general, a district court need not consult statistics." See Doc. 124 at 14-15. But it quotes *Jenkins* out of context. What the *Jenkins* court in fact said was as follows:

> In general, a district court need not consult the Commission's statistics because there is "no assurance of comparability." *Here, however, the Commission's statistics, which were readily available to the district court at the time of sentencing, allow for a meaningful comparison of Jenkins's behavior to that of other child pornography offenders.*

*Jenkins*, 854 F.3d at 193 (citations omitted) (emphasis added). In support of this statement, the *Jenkins* court cited *United States v. Irving*, 554 F.3d 64, 76 (2d Cir. 2009), which held that statistics for "sexual abuse crimes generally" did not provide sufficient comparability because they did not distinguish between defendants who committed crimes against children and those who committed crimes against adults. In contrast, the statistics before the *Jenkins* court were specific to child pornography offenders, and as such, the Second Circuit found them both meaningful and ultimately controlling.

In other words, what *Jenkins* actually holds is that *general* statistics regarding whole categories of offenses are not probative while more focused statistics can and should be used. Statistics of similar nature were also relied upon in *United States v. Stock*, 685 F.3d 631, 629-30 (6th Cir. 2012), a case of failure to register as a sex offender:

> … [A]lthough the district court will need to conduct a new sentencing hearing, we observe that Stock's 72–month sentence is an outlier when compared to other sentences for failure-to-register violations, even when that comparison is limited to other criminal-history-category-VI offenders. In fact, it was by far the longest sentence imposed during all of 2008, 2009, and 2010—possibly ever—on a criminal-history-category-VI offender for a failure-to-

register offense.[7]

In contrast to *Jenkins* and *Stock*, the cases cited at page 15, note 4 of the Government's memorandum involve generalized statistics similar to those in *Irving*. The statistics presented in this case are obviously far more like the former than the latter; indeed, if anything, they are far more detailed than the figures presented to the *Jenkins* and *Stock* courts, because they are not only narrowed down by the base guideline (which in this case, unlike *Irving* and like *Jenkins*, is specific to offenses against minors) and criminal history category but by total offense level, plea status, and statutory maximum.

Further, even if one were to assume that courts are not *required* to consult statistics, the fact remains that they can and often do. *See, e.g.*, *United States v. Musgrave*, 647 Fed. Appx. 529, 538 (6th Cir. 2016) (upholding reasonableness of sentence against Government appeal where district court "studied sentencing statistics nationally and in the Southern District of Ohio"); *United States v. Buesing*, 615 F.3d 971, 974 (8th Cir. 2010) (affirming sentence that was arrived at in part through analysis of Sentencing Commission statistics); *United States v. Stern*, 590 F. Supp. 2d 945, 961 (N.D. Ohio 2008) (because the purpose of guideline sentencing is to reduce unwarranted disparities nationwide, "[t]he Court has carefully considered an extremely wide variety of opinions from across the country as well as the National Guideline Statistics"); *United States v. Brasfield*, 2011 WL 3844181, *4 n.5 (E.D. Wis. 2011) (reviewing statistics for child pornography offenders); *United States v. Garcia-Jaquez*, 807 F. Supp. 2d 1005, 1016 (D. Colo. 2011) (considering statistics for immigration offenses); *United States v. Kamper*, 860 F.

---

[7] The *Stock* court noted that, "[h]elpfully, the United States Sentencing Commission provided this offense- and criminal-history category-specific data in response to a specific request from the Court." *Stock*, 685 F.3d at 629 n.6. Such "helpful" data should, of course, ideally be provided by defense counsel, whose duty it is to provide the district court with everything that might be "helpful" in securing a sentencing decision in his client's favor.

9

Supp. 2d 596, 608 (E. D. Tenn. 2012) (lamenting the absence of statistics for MDMA offenses and stating that "[t]he Commission's statistical work is invaluable to district court judges"). Certainly, with statistics as such a well-recognized and oft-used tool in making sentencing decisions, what excuse can there be to not provide such a tool to the sentencing court where an enormous upward variance is at issue and where use of the tool would point toward a much lesser prison term.

The Government further contends that the cases underlying the sentencing statistics were not "similarly situated" to this case due to Mr. Johnston's heinous acts. *See* Doc. 124 at 13-14. However, the Ninth Circuit has held that, for the purposes of determining unwarranted disparities, "similarly situated" simply means "defendants who have similar criminal records and have been found guilty of similar conduct." *United States v. Plouffe*, 436 F.3d 1062, 1063 n.1 (9th Cir. 2006); *see also United States v. Boston*, 625 Fed. Appx. 486, 489 (11th Cir. 2009) (distinguishing between "statistics for all fraud cases" and, in a parenthetical, statistics for defendants "with similar records who were found guilty of similar conduct"). That, as noted by *Jenkins*, *Stock* and others, is satisfied if the statistics involve defendants whose sentences were calculated by the same guideline. Moreover, given that the statistics in this case involved defendants who were not only convicted of sex offenses against minors but who had the same high offense level and statutory maximum as Mr. Johnston, it may reasonably be inferred that many of these defendants also committed heinous acts against children.

In sum, the statistics in this case were sufficiently detailed to provide true comparability and, given the extraordinary upward variance that was suggested by the Government and that could have been shown to be excessive through the use of statistical proof, Mr. Goldrosen had a duty to ascertain and submit them. Moreover, given the *undisputed fact* that, as stated in the

original moving papers, the sentence meted out to Mr. Johnston was a variance 125 months greater than imposed on any other defendant sentenced under the same guideline over a period of five years, *see* Doc. 120 at 2-3, there is at least a reasonable probability that presentation of such statistics would have swayed a reasonable sentencer. Defendant reiterates that a reasonable probability is a "fairly low threshold," *see Riggs, supra*, and that as discussed in the moving memorandum, the reasonable probability standard is to be applied objectively based on its effect on a "median court" rather than what effect it would have had on this particular sentencing Court. *See Saranchak v. Beard*, 616 F.3d 292, 309 (3d Cir. 2010); *Jones v. United States*, 224 F.3d 1251, 1259-60 (11th Cir. 2000); *Harris v. Thompson*, 698 F.3d 609, 648 (7th Cir. 2012). By this standard, defendant Johnston clearly received ineffective assistance of counsel and this Court should grant his petition for Section 2255 relief.

### IV. Failure to Call Dr. Lines as a Sentencing Witness Was Ineffective Assistance.

The Government next argues that Mr. Goldrosen was not ineffective for failing to offer up Dr. Lines as a witness after the sentencing court rejected his report out of hand, *see* Doc. 124 at 18-20, but it is wrong. To begin with, contrary to the Government's contention, there is ample authority for defense psychologists to testify at sentencing. Pursuant to Fed. R. Crim. Pro. 32(i)(2), "[t]he court may permit the parties to introduce evidence" on disputed sentencing issues, and "[i]f a witness testifies at sentencing, Rule 26.2(a)-(d) and (f) applies." The Government relies exclusively on Rule 32(i)(4), which regulates who can "speak" at sentencing, but ignores Rule 32(i)(2), which allows for presentation of evidence and specifically contemplates witness testimony. Mr. Goldrosen would have been well within his rights to offer Mr. Lines' testimony to the sentencing court.

The Government further contends that this Court "did not want to hear from Dr. Lines"

and that counsel was not required to call an expert witness whose opinion the district court has rejected. *See* Doc. 124 at 18-19.  But the purpose of calling Dr. Lines would have been precisely to clear up the reasons why this Court had rejected his report out of hand.  This Court's rejection of his report focused on defendant's behavior in jail, *see* Doc. 124-10 at 33, and Dr. Lines could have explained how the Static-99 tool he used accounts for such factors and indeed how defendant's behavior while incarcerated factored into his conclusions.  If presented for direct and cross-examination and for follow-up questioning by the Court, Dr. Lines could have rehabilitated himself as an expert witness in the manner described in the original moving papers.

      The Government's "three strategic reasons" why counsel might not have called Dr. Lyles, *see* Doc. 124 at 19-20, likewise hold no water.  Indeed, two of the reasons – that doing so might have undermined Dr. Lines' future marketability as an expert witness and/or might have undermined Mr. Goldrosen's own credibility – are not even legitimate strategic considerations at all, because nothing permits a defense counsel to place his credibility or the financial interests of his expert witness above the interests of his client.  And in any event, a respectful presentation of Dr. Lines, focusing on clearing up this Court's concerns with his opinion, would not have diminished Mr. Goldrosen's credibility because this is the kind of presentation that defense attorneys make all the time on their clients' behalf, and likewise would not have angered a reasonable sentencing court.  Again, defendant reiterates that ineffective assistance is measured according to an objective standard rather than the idiosyncrasies of a particular court, *see Saranchak, Jones and Harris, supra*, and given that a reasonable court would not have been angered by a respectful offer of proof to address its concerns, Mr. Goldrosen should have called the psychologist and his failure to do so was ineffective assistance.[8]

---

[8] On page 18 of its Opposition to Defendant's Motion to Vacate a Sentence Under 28 U.S.C. §2255, page 18, line 12, the government states: "Johnston's new, unsworn, and self-serving assertion

12

## V. Failure to Object to the Imposition of a Fine Was Ineffective Assistance.

Counsel was ineffective for failing to object to imposition of a $17,500 fine that the PSR stated that he was unable to pay. The Government's contention that an objection would have been needless and futile because family resources were available to pay the fine, *see* Doc. 124 at 20-21, must founder against the absence of any authority for sentencing courts to impose financial obligations on defendants' family members or to assume that family money will be available to pay Mr. Johnston's fine at all times in the future. Any such assumption is necessarily speculative and does not provide a sufficient basis upon which to impose sentence, particularly since any ability-to-pay analysis would have to account for the considerable restitution obligation which takes priority. Therefore, as further set forth in the original moving

---

'[u]pon information and belief' about how Dr. Lines would have testified at sentencing if only Goldrosen had called on him proves nothing. Pet. 5-6." Dr. Lines has advised undersigned counsel that:

> Had I been called to testify in response to Judge White's comments about my report, I would have tried to inform him of the virulent, mind-altering nature of the double addictions to methamphetamines and compulsive sexuality.
>
> As I stated in my report, Blake Johnston's offense conduct occurred concurrent with his ongoing methamphetamine use. Like any other any addiction, what may appear to be a moral failing is instead a neurologically- and chemically-induced dependency on the combined experiences of heightened sensation through the stimulant, methamphetamine, and heightened sexuality through compulsive pleasure seeking. Chronic meth use results in depletion of the brain's normal stimulus mechanisms, causing reliance on the drug in order for the user to feel normal. Likewise, compulsive sexual practice fueled by methamphetamine, where an individual is aroused for hours on end, makes normal sexual relations seem boring and dull by comparison. In other words, he was a sick man, not simply a morally reprehensible bad actor, during his offense conduct.
>
> Additionally, I would have emphasized Mr. Johnston's low score on the Static-99. Although I felt this measure underestimated his risk, simply because of the grossly inappropriate nature of his offense conduct, nevertheless, two additional factors were in favor of his reduced risk of recidivism. One is the greatly reduced propensity older individuals present for sexual offense. Assuming that a term of confinement was virtually guaranteed, he would have been significantly older upon release, thus less of a risk. Second, the assumption that he would present substantial risk at release suggests that Judge White placed little efficacy in the BOP's sexual offender program, as if it would have no impact on his future conduct. This I think would be an erroneous assumption.

papers, Mr. Goldrosen should have objected to the fine and a reasonable probability exists that, if a cogent objection had been made, the outcome of the proceeding would have been more favorable.

## VI. The Cumulative Effect of Counsel's Errors Requires Relief.

Finally, "a defendant may prove that he has suffered ineffective assistance of counsel based on the cumulative effect of errors." *See United States v. Ballesteros*, 23 Fed. Appx. 718, 720 (9th Cir. 2001), *citing Wade v. Calderon*, 29 F.3d 1312, 1319 (9th Cir. 1994). "In evaluating the defendant's claim, the court must ask whether the multiple deficiencies have the cumulative effect of denying a fair [sentencing] to the petitioner." *Id,, citing Ewing v. Williams*, 596 F.2d 391, 396 (9th Cir. 1979). Here, defendant submits that even if each of the above errors by Mr. Goldrosen does not warrant relief in and of itself – which each of them does – then the cumulative weight of the errors affected the sentencing so drastically and prejudicially as to amount to ineffective assistance of counsel.

## CONCLUSION

WHEREFORE, in light of the foregoing, this Court should find that defendant Johnston received ineffective assistance of counsel at sentencing or alternatively schedule an evidentiary hearing on his ineffective assistance claims, together with such other and further relief as it may deem just and proper.

Dated:  June 29, 2017

Respectfully submitted,

/s/ Alan Ellis_____
ALAN ELLIS
80 Pinheiro Circle
Novato, CA 94945
(415) 895-5076
AELaw1@alanellis.com
Attorney for Defendant Johnson
