UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | Case No. 4:14-cr-00545-JSW |
|---|---|
| Plaintiff, | |
| v. | **ORDER DENYING MOTION TO VACATE SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND DENYING CERTIFICATE OF APPEALABILITY** |
| BLAKE ROBERT JOHNSTON, | |
| Defendant. | Re: Dkt. No. 120 |

Now before the Court for consideration is Blake Robert Johnston's ("Mr. Johnston") motion to vacate, pursuant to 28 U.S.C. section 2255. The Government has filed an answer opposing the motion. Mr. Johnston has filed a reply brief in support of the motion to vacate. The Court has considered the parties' papers, relevant legal authority, and record in this case, and the Court HEREBY DENIES the motion to vacate and DENIES a certificate of appealability.

**BACKGROUND**

On October 16, 2014, the Government charged Mr. Johnston with one count of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. section 2423(b) ("Section 2423(b)"). (Dkt. No. 1, Compl. ¶ 22.) On April 2, 2015, the Government filed a superseding indictment against Mr. Johnston with six additional counts.[1]

On December 1, 2015, Mr. Johnston entered a plea of guilty to one count of travel with

---

[1] The additional counts included in the superseding indictment are: one count of transportation of a minor with intent to engage in criminal sexual activity, in violation of 18 U.S.C. section 2423(a); one count of online enticement of a minor, in violation of 18 U.S.C. section 2422(b); two counts of production of child pornography, in violation 18 U.S.C. section 2251(a), (e); one count of possession of child pornography, in violation of 18 U.S.C. section 2252(a)(4)(B); and one count of distribution of child pornography, in violation of 18 U.S.C. section 2252(a)(2). (Dkt. No. 19, Superseding Indictment.)

intent to engage in illicit sexual conduct, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C). (Dkt. No. 45, Plea Agreement ("Agreement").) Mr. Johnston admitted to facts surrounding his travel to engage in illicit sexual conduct with a female he knew was fourteen years old. (*Id.*, ¶ 2.) The Agreement expressly provided that the maximum prison term for violating Section 2423(b) is 360 months imprisonment with no less than 120 months imprisonment. (*Id.*, ¶ 8.)

Mr. Johnston also agreed "not to file any collateral attack on [his] conviction or sentence, including a petition under 28 U.S.C. [section] 2255 or 28 U.S.C. [section] 2241, except that [he] reserve[d] [his] right to claim that [his] counsel was ineffective in connection with the negotiation of this Agreement or the entry of [his] guilty plea." (*Id.*, ¶ 5.)

On April 5, 2016, the Court sentenced Mr. Johnston to 360 months imprisonment. Mr. Johnston now seeks to vacate his sentence. Mr. Johnston argues that his counsel was ineffective for not adequately representing Mr. Johnston's interests at the sentencing hearing.

## ANALYSIS

**A.     Standard of Review.**

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a).

Section 2255 expressly provides, in pertinent part, that a district court shall grant an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." § 2255(b). An evidentiary hearing usually is required "if the motion states a claim based on matters outside the record or events outside the courtroom." *United States v. Burrows*, 872 F.2d 915, 917 (9th Cir. 1989). However, denial without a hearing is appropriate when the record "affirmatively manifest[s] the factual or legal invalidity of the petitioner's claims." *Baumann v. United States*, 692 F.2d 565, 571 (9th Cir. 1982).

2

To justify an evidentiary hearing, the petitioner may not rely on "[m]ere conclusory statements." *Id.* at 571. However, "the petitioner need not detail his evidence, but must only make specific factual allegations which, if true, would entitle him to relief." *Id.* Thus, a court may deny a Section 2255 motion without hearing if "viewing the petition against the record, its allegations do not state a claim for relief or are so palpably incredible or so patently frivolous as to warrant summary dismissal." *Id.*

The Court concludes an evidentiary hearing on Mr. Johnston's claims is not warranted.

**B.   The Court Denies the Motion.**

    **1.   Mr. Johnston Waived His Claims.**

The Government argues Mr. Johnston expressly waived the right to bring the claims asserted in his petition that challenge his sentence.[2] It is well established in the Ninth Circuit that a defendant can waive statutory rights in a plea agreement, including the right to collaterally attack a sentence. *United States v. Abarca*, 985 F.2d 1012, 1014 (9th Cir. 1992) (affirming waiver of right to petition for relief under 28 U.S.C. § 2255); *United States v. Navarro-Botello*, 912 F.2d 318, 321 (9th Cir. 1990) (affirming waiver of right to appeal). The waiver is effective if it is both knowing and voluntary and encompasses the grounds raised by the defendant. *See Davies v. Benov*, 856 F.3d 1243, 1246-47 (9th Cir. 2017).

When Mr. Johnston pled guilty, he expressly agreed "not to file any collateral attack on [his] conviction or sentence, including a petition under 28 U.S.C. [section] 2255 or 28 U.S.C. [section] 2241, except that [he] reserve[d] [his] right to claim that [his] counsel was ineffective in connection with the negotiation of this Agreement or the entry of [his] guilty plea." (Agreement ¶ 5.) Mr. Johnston does not dispute that his plea was entered knowingly and voluntarily.[3] Further,

---

[2] The Government also argues that even if Mr. Johnston's ineffective counsel claims are not waived, they fail on the merits. The Government argues that Mr. Johnston fails to show that counsel's performance was either deficient or that he suffered prejudice. *See Strickland v. Washington*, 466 U.S. 668 (1984). This argument is discussed below.

[3] Additionally, there is no evidence that Mr. Johnston entered the Agreement involuntarily or without knowledge of its effects. In the Agreement, Mr. Johnston agreed to certain facts supporting a charge of travel with intent to engage in illicit sexual conduct. (Agreement ¶ 2.) Mr. Johnston then made affirmations that: he had adequate time with his attorney to discuss the case, the evidence, and the Agreement; he was not impaired by any alcohol, drug, or medicine that

3

1 Mr. Johnston's claims of ineffective counsel are all connected with sentencing, not the negotiation of the Agreement or the entry of his guilty plea as provided for in the Agreement. Mr. Johnston therefore waived his claims.

Mr. Johnston argues in his reply brief that a 2014 Department of Justice memorandum mandates that prosecutors decline to enforce waivers for meritorious claims of ineffective assistance of counsel.[4] Because Mr. Johnston raises this new argument for the first time in his reply brief, the Court need not consider it. *See, e.g.*, *United States v. Wilde*, 74 F. Supp. 3d 1092, 1099-1100 (N.D. Cal. 2014), *aff'd*, 674 F. App'x 671 (9th Cir. 2017). The Court concludes that Mr. Johnston's argument is, in any event, unpersuasive.

As authority for the proposition that this Court should decline to enforce the wavier in the Agreement, Mr. Johnston cites an unreported decision of the Eleventh Circuit, *Murdock v. United States*, 589 F. App'x 526, 527 (11th Cir. 2015) (per curiam). As such, *Murdock* is not binding on this Court. Even so, Mr. Johnston overstates the scope of *Murdock*. There, the court directed the Government to address its decision to enforce a waiver barring claims of ineffective assistance in light of the Memorandum. The Government then voluntarily chose not to enforce the waiver. *Murdock* does not hold that courts must direct the Government to consider the Memorandum nor that courts must refuse to enforce waivers of ineffective assistance of counsel. Instead, *Murdock* indicates only that the Government may, in its discretion, choose whether to enforce the waiver.

Further, to the extent that the Memorandum should be enforced, it is only applicable "when defense counsel rendered ineffective assistance resulting in prejudice or when the defendant's ineffective assistance claim raises a serious debatable issue that a court should resolve." Memorandum. The Memorandum applies, therefore, only to meritorious ineffective assistance of counsel claims. For the reasons stated below, Mr. Johnston has failed to state a

---

would affect his understanding of the Agreement; the Agreement was made knowing the charges, possible defenses, and the benefits and detriments of proceeding to trial; and the Agreement was made voluntarily, without coercion or threat. (*Id.*, ¶¶ 18-20.)

[4] Memorandum from James M. Cole, Deputy Attorney General, For All Federal Prosecutors (Oct. 14, 2014), *available at* https://www.justice.gov/file/70111/download (hereinafter "Memorandum").

4

meritorious claim of ineffective assistance of counsel.

Accordingly, the Court concludes that Mr. Johnston has waived his right to bring this motion and denies it on that basis. *See Davies*, 856 F.3d at 1246-47. If Mr. Johnston's waiver was ineffective, the Court would still deny the motion for failing to state a meritorious claim of ineffective assistance of counsel.

### 2. Mr. Johnston Cannot Show Ineffective Assistance of Counsel.

To prevail on a claim of ineffective assistance of counsel, a petitioner must show both that his counsel's representation was deficient by an "objective standard of reason" and that he was prejudiced. *Strickland*, 466 U.S. at 686-687. There is a strong presumption that counsel's behavior was reasonable. *Id.* at 689; *see also Babbit v. Calderon*, 151 F.3d 1170, 1173 (9th Cir. 1988) (relevant inquiry is whether choices made were reasonable, not what counsel could have done). Counsel is afforded wide latitude in formulating trial tactics and strategy. *Hensley v. Crist*, 67 F.3d 181, 185 (9th Cir. 1995). Prejudice occurs only when "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. The Court need not consider one prong of *Strickland*, either deficiency or prejudice, if there is an insufficient showing of the other. *Id.* at 697.

Mr. Johnston raises three claims of ineffective assistance of counsel. He argues that counsel rendered ineffective assistance at the sentencing hearing because counsel: should have presented sentencing statistics to show that a 360-month sentence was high in relation to similarly situated offenders; should have called Mr. Johnston's examining psychologist to the stand when the Court rejected his report stating that Mr. Johnston was a low risk for recidivism; and should have objected to the imposition of a fine. While it is unnecessary for a court to reach the issues of deficiency and prejudice if one is dispositive, the Court concludes that Mr. Johnston is unable to show that counsel's performance was either deficient or prejudicial.

### a. Counsel's Decision Not to Present Sentencing Commission Statistics.

A court must consider "the need to avoid *unwarranted* sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6) (emphasis added) ("Section 3553"). In addition to this factor, the court must also

1  consider numerous other factors set forth in Section 3553(a) and in the United States Sentencing
2  Guidelines that bear on whether a particular sentence is warranted.  Mr. Johnston argues that if
3  counsel had presented sentencing statistics of similarly situated offenders, the Court may not have
4  sentenced Mr. Johnston to the statutory maximum.  The Ninth Circuit has not directly addressed
5  whether failing to present sentencing statistics renders counsel ineffective.  This Court is
6  persuaded by the Second Circuit's determination that as a general rule, sentencing statistics need
7  not be consulted because "there is 'no assurance of comparability.'"  *United States v. Jenkins*, 854
8  F.3d 181, 193 (2d Cir. 2017) (quoting *United States v. Irving*, 554 F.3d 64, 76 (2d Cir. 2009)).

9  To satisfy *Strickland*'s first prong, counsel's representation must fall below an "objective
10 standard of reason."  *Strickland*, 466 U.S. at 686-687.  To show deficiency, Mr. Johnston
11 compares counsel's decision not to present sentencing statistics to the defendant's ineffective
12 counsel in *Wiggins v. Smith*, 539 U.S. 510 (2003).  In *Wiggins*, counsel failed to present
13 background information about the defendant in a capital case that was easily available.  Presenting
14 such background information in capital cases was also standard practice in the state.  Taking at
15 face value Mr. Johnston's claims that pertinent sentencing statistics are easily available, Mr.
16 Johnston has still made no claim that presenting sentencing statistics is a standard practice.
17 Therefore, Mr. Johnston is unable to overcome the strong presumption that counsel's performance
18 was reasonable and so fails under the deficiency prong of *Strickland*.  However, even if counsel's
19 failure to present sentencing statistics was deficient, Mr. Johnston could not show that he was
20 prejudiced.

21 To show prejudice, Mr. Johnston argues that his sentence was higher than similarly
22 situated offenders.  He claims that his research of United States Sentencing Commission statistics
23 revealed 12 "identically situated offenders," namely those "sentenced under [U.S.S.G. section
24 2G1.3][5] with a final offense level of 32 in [Criminal History Category] I, pleaded guilty, and were
25 subject to a 360-month statutory maximum."  (Mot. at 1:26-2:2.)  Mr. Johnston then defines

---

[5]  Mr. Johnston was sentenced using the United States Sentencing Guidelines Manual in effect on November 1, 2015.  (PSR ¶ 68.)  All references to the United States Sentencing Guidelines are to the guidelines in effect on that date, unless otherwise noted.

"similarly situated defendants" as "simply mean[ing] 'defendants who have similar criminal records and have been found guilty of similar conduct.'" (Reply at 10 (citing *United States v. Plouffe*, 436 F.3d 1062, 1063 n.1 (9th Cir. 2001).) Taking Mr. Johnston's definition at face value and considering the twelve defendants to be similarly situated, Mr. Johnston nevertheless fails to show that the sentence imposed was unwarranted. For instance, the Court noted at sentencing that Mr. Johnston was subject to an upward departure under Section 2G1.3 cmt. n.7 for an offense "involv[ing] ten or more minors." (Dkt. No. 67, Sentencing Tr. at 34:25-35:6.) Mr. Johnston offers no evidence that any of the twelve offenders referenced in the statistics were sentenced based on similar facts.[6]

Mr. Johnston then cites *Jenkins* for the proposition that a "within-guidelines sentence [was] substantively unreasonable where the Court neglected to consult readily available sentencing statistics from the U.S. Sentencing Commission." (Mot. at 4:10-13.) Mr. Johnston misapplies *Jenkins*. As noted above, the court in *Jenkins* stated that, as a general rule, sentencing statistics need not be consulted. *Jenkins*, 854 F.3d at 193. The court then distinguished the defendant, a non-violent offender, from "the most dangerous offenders" who participate in online child-pornography communities or "engage[] in any sexually dangerous behavior separate from [their] crimes of conviction." *Jenkins*, 854 F.3d at 190 (internal quotation marks omitted). By doing so, the court found sentencing statistics instructive for showing that the sentence imposed on a non-violent defendant was unreasonably high in relation to more dangerous defendants. *Jenkins*, 854 F.3d at 188-90. Unlike the facts in *Jenkins*, and as discussed below, the facts of this case do not lend themselves to distinguishing Mr. Johnston from especially egregious offenders.

Mr. Johnston next claims that the court in *Jenkins* found U.S.S.G. section 2G2.2 ("Section

---

[6] For example, Mr. Johnston's research does not reveal whether the 12 defendants had a similar number of victims as Mr. Johnston. The Court determined that the extent of Mr. Johnston's criminal activity warranted a sentence that would "reflect the seriousness of the offense." 18 U.S.C. § 3553(a)(2)(A). As of April 5, 2016, the Government identified "94 minor victims who were enticed online by [Mr. Johnston] to engage in sexual activity, ranging in age from about 12 to 17 years old, and coming from thirty two states and six different countries." (U.S. Sentencing Mem. at 3:6-9.) The Government also collected information that indicates Mr. Johnston had "potentially more than 500 victims." (Dkt. No. 124, Declaration of Lesley Brown in Support of U.S. Sentencing Mem., ¶ 5.)

7

2G2.2") "irrational[]" because "nearly all those sentenced under [Section 2G2.2] received close to the statutory maximum penalty." (Mot. at 4:14-22.) As a threshold matter, it is unclear why Mr. Johnston criticizes Section 2G2.2 when this Court did not sentence Mr. Johnston under that guideline. Even so, Mr. Johnston's reliance on the quoted text is misplaced. The court in *Jenkins* was critical of the application of Section 2G2.2 only to the extent that it resulted in nonviolent sexual offenders receiving higher sentences than the most dangerous offenders, such as those "who intentionally seek[] out and contact[] a twelve-year-old on the internet, convince[] the child to meet and to cross state lines for the meeting, and then engage in repeated sex with the child." *Jenkins*, 854 F.3d at 189. However, travel with intent to engage in illicit sexual conduct, to which Mr. Johnston pled guilty, is exactly the type of conduct the court in *Jenkins* suggests could warrant a higher sentence. Therefore, Mr. Johnston fails to show that counsel's decision not to cite sentencing statistics caused him prejudice.

For these reasons, the Court denies Mr. Johnston's first claim for ineffective assistance of counsel.[7]

### b. Counsel's Decision Not to Call Mr. Johnston's Examining Psychologist to the Stand.

Mr. Johnston argues that if counsel had called Mr. Johnston's examining psychologist, Dr. Lines, to the stand to defend his report that Mr. Johnston had a low risk of recidivism, he could have received a lower sentence. In general, "[f]ew decisions a lawyer makes draw so heavily on

---

[7] Mr. Johnston also argues that counsel should have notified the Court that a 360-month sentence is a de facto life sentence. Mr. Johnston also makes no claim that presenting a sentence as a life sentence is standard practice. Therefore, Mr. Johnston's cannot show that counsel was inadequate by failing to present the 360-month sentence as a de facto life sentence. Even if counsel was deficient, however, Mr. Johnston cannot show prejudice. As authority for the proposition that this constituted prejudice, Mr. Johnston again cites *Wiggins* and *Jenkins*. This Court does not find support for Mr. Johnston's claim in *Wiggins*, either in the non-precedential syllabus to which Mr. Johnston cites or the in the body of the opinion which addresses a habeas petition regarding a death sentence. Similarly, *Jenkins* is not persuasive on the issue. In *Jenkins*, the court criticized the Government for offering no justification for a lifetime of supervised release, not prison. *Jenkins*, 854 F.3d at 195. Mr. Johnston, on the other hand, has agreed to a lifetime of supervised release. (Sentencing Tr. at 29:22-30:5.) Moreover, the Court noted that Mr. Johnston was a "danger to the community." (*Id.* at 33:16-17.) Thus, there is no reason to believe that had the Court viewed the 360-month sentence as a de facto life sentence, it would have imposed a lower sentence. Accordingly, Mr. Johnston fails to state a claim for ineffective assistance of counsel.

8

1  professional judgment as whether or not to proffer a witness at trial." *Lord v. Wood*, 184 F.3d

2  1083, 1095 (9th Cir. 1999).  Strategic decisions, such as when to call a witness at sentencing, are

3  "virtually unchallengeable" after counsel has made a "thorough investigation of law and fact[]."

4  *Strickland*, 466 U.S. at 690.

5        Mr. Johnston provides no evidence that failing to call Dr. Lines to the stand was deficient.

6  Both counsel and this Court closely analyzed Dr. Lines' report.  (Sentencing Tr. at 32:7-10.)  After

7  counsel's thorough presentation of Dr. Lines' findings at the sentencing hearing, the Court

8  rejected the report's conclusions.  (*Id.* at 33:6-8.)  Mr. Johnston argues that it would have been

9  easy to call Dr. Lines to the stand to defend the report, and that counsel's failure to do so

10  constituted ineffective counsel.  However, there is no case law to suggest that calling a witness to

11  the stand to present redundant testimony is constitutionally required.  *Cf. Atwood v. Ryan*, 870

12  F.3d 1033, 1063 n.27 (9th Cir. 2017) (failing to produce additional documentation of defendant's

13  drug use would have been redundant and was "neither deficient nor prejudicial").  Therefore, Mr.

14  Johnston cannot show that counsel's assistance was deficient.  Even if Mr. Johnston could show

15  that counsel was deficient, Mr. Johnston could not show that he was prejudiced.

16        There is no evidence that failing to call Dr. Lines to the stand prejudiced Mr. Johnston.  Dr.

17  Lines' report was used extensively in the Presentence Investigation Report ("PSR").  (PSR ¶¶ 105-

18  114.)  Counsel also used Dr. Lines' report extensively at sentencing to argue for a lower sentence

19  for Mr. Johnston.  (Sentencing Tr. at 27:16-29:13.)  Because the Court had already made a

20  thorough evaluation of the report and counsel had already vigorously defended it at sentencing, it

21  is unlikely that Dr. Lines' defense of the report would have resulted in a lower sentence.

22  Therefore, Mr. Johnston fails to show that counsel's decision not to call Dr. Lines to the stand at

23  sentencing prejudiced Mr. Johnston.

24        For these reasons, the Court denies Mr. Johnston's second claim of ineffective assistance

25  of counsel.

26        **c.**      **Counsel's Decision Not to Object to the Imposition of a Fine.**

27        Mr. Johnston argues that if counsel had objected to the imposition of a fine of $17,500 at

28  sentencing, he may have received no fine at all.  He further argues that the imposition of a fine,

given his limited assets, would reduce his ability to pay restitution. The purposes of restitution and fines are distinct. The purpose of restitution is to make the victims of crime whole. *United States v. Hunter*, 618 F.3d 1062, 1064 (9th Cir. 2010). The purpose of a fine, on the other hand, "is to punish the defendant, reflect the serious of the offense, promote respect for the law, and deter future wrongful conduct." *Nickles v. United States*, No. 14–00466, 2014 WL 12619771, at *2 n.2 (C.D. Cal. July 24, 2014) (citing U.S.S.G. § 5E1.2(d)(2)). When determining the amount of a fine to impose, a "court shall consider," among other things, "any restitution or reparation that the defendant has made or is obligated to make." U.S.S.G. § 5E1.2(d)(4). If a defendant is indigent and so "is not able" to pay the fine, a court may impose a fine less than the minimum amount or waive it. § 5E1.2(e).

The applicable range for a fine for Mr. Johnston's offense is from $17,500 to $175,000, with a statutory maximum fine of $250,000. U.S.S.G. §§ 5E1.2(c)(3), (h)(1); 18 U.S.C. § 3571(b).[8] By imposing a fine of $17,500, the Court limited the fine to the minimum recommended amount under the Guidelines. The PSR indicated that Mr. Johnston had liquid assets of $16,000, total assets of $30,000, along with financial resources from his mother, and potential future access to a "large inheritance." (PSR ¶¶ 121-22.) Because Mr. Johnston may have access to significant assets following his release from prison, there is no reason to believe that objecting to the imposition of any fine at all would have been successful. *Cf. United States v. Seminole*, 882 F.2d 441 (9th Cir. 1989) (remanding issue of fine imposed on indigent defendant to determine whether defendant would have "sufficient earning capacity to pay the fine following his release from prison") (citing U.S.S.G. § 5E4.2(d)(2) (1988)).[9] Therefore, Mr. Johnston cannot show that he was prejudiced because counsel failed to object to the imposition of any fine. Mr. Johnston's argument that the imposition of a fine would impede his ability to pay restitution is unpersuasive. Because restitution payments have priority over payments of a fine, Mr. Johnston

---

[8] The Agreement further stipulates that the maximum fine for Mr. Johnston be no greater than $250,000. (Agreement ¶ 1.)

[9] U.S.S.G. section 5E4.2(d)(2) (1988) is substantially unchanged and currently published as U.S.S.G. section 5E1.2(d)(2) (2015).

10

1 must pay restitution first. Therefore, the fine the Court imposed will not hinder Mr. Johnston's ability to pay restitution. *See* U.S.S.G. § 5E1.1(c). For these reasons, the Court denies Mr. Johnston's third claim of ineffective counsel.

The Court concludes Mr. Johnston has failed to establish his claims for ineffective assistance of counsel, and it DENIES his motion on that alternate basis as well.

### C. The Court Denies a Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires a district court to rule on whether a petitioner is entitled to a certificate of appealability in the same order in which the motion is denied. Mr. Johnston has failed to make a substantial showing that his claims amounted to a denial of his constitutional rights or demonstrate that a reasonable jurist would find the denial of his claims debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, a certificate of appealability is not warranted in this case. Mr. Johnston may not appeal the denial of a certificate of appealability, but he may seek a certificate from the Court of Appeals under Federal Rules of Appellate Procedure 22. Rule 11(a) of the Rules Governing § 2255 Proceedings.

### CONCLUSION

For the foregoing reasons, the Court DENIES Mr. Johnston's motion to vacate and DENIES a certificate of appealability. The Court shall issue a separate judgment relating to this motion, and the Clerk shall close the related civil case *Johnston v. United States*, No. 17-cv-02227- JSW.

**IT IS SO ORDERED.**

Dated: June 25, 2019

_____
JEFFREY S. WHITE
United States District Judge